IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHAN HACK, | : | CIVIL ACTION |
|     Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| WARDEN MS. CHAMBERLIN, et al., | : | NO. 09-4358 |
|     Respondents. | : | |

## REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                                    July    30 , 2010

      Before the Court is the *pro se* petition of Nathan Hack (alternatively "Hack" or "Petitioner") for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated at S.C.I. – Pittsburgh.[1] He challenges his state court conviction on the grounds that his sentence was improper and that he was denied the assistance of effective counsel. He also contends that all judicial proceedings in Pennsylvania are unconstitutional because of alleged defects in the process by which the state amended its constitution in 1968. For the reasons set forth below, we conclude that the claims raised are untimely as well as procedurally defaulted and therefore recommend that the petition by denied and dismissed.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

      It has been more than 20 years since Hack committed the offenses that underlie this petition. Both his apparent inability or unwillingness to comply with the terms of his sentence and his difficulties navigating the state court legal system have given rise to a tortured procedural history.

---

[1] Although Petitioner is confined within the Western District of Pennsylvania, venue is proper here in that his current confinement is the result of a conviction and sentence imposed by a court of common pleas within this district. *See* 28 U.S.C. § 2241(d).

1

His petition to this Court is the latest chapter.

### A. The conviction and sentencing(s)

On January 23, 1990, Hack entered pleas of *nolo contendere* in the Philadelphia Court of Common Pleas on charges of aggravated assault, robbery, theft by unlawful taking or disposition, and theft by receiving stolen property concerning a 1989 robbery of a customer at a check-cashing agency. The Honorable G. Craig Lord accepted Hack's pleas and sentenced him to a term of imprisonment of 11 ½ – 23 months for the aggravated assault and a concurrent term of the same length for the robbery conviction, while suspending sentences on the theft convictions. The sentence was to run consecutively to a term of incarceration that had been imposed upon Hack in another case. In June 1991, Hack was granted parole, which was due to expire on August 29, 1992. Before he reached that date, however, he was arrested on new charges. Due to a number of subsequent arrests and missed court appearances, his period of incarceration, probation, and/or parole relative to the 1990 convictions was extended at violation hearings held on June 19, 1998, June 27, 2003, August 4, 2004, and September 16, 2005, all before the Honorable Rayford A. Means. *See generally* Resp. at 2-3 and authorities cited therein. *See also* Comm. Pl. Ct. Op., 9/28/05 [Resp. Ex. D], at 1 (noting that "[t]hrough a series of arrests, convictions, parole/probation violations, and re-sentences, Defendant has remained incarcerated for the better part of the past decade and a half"); Prob. Dept. Ltr. dated 6/2/98 [St. Ct. Rec.] (noting that parole had not been terminated and that violation hearing needed to be scheduled).

At that final violation hearing on September 16, 2005, Judge Means again found Hack to be in violation, revoked his probation, and terminated his parole. The court then sentenced him to a term of imprisonment of four to eight years, to be followed by six years of reporting probation. The

sentence was to run concurrently with any other sentence being served, and Hack was awarded credit for time served. On September 28, 2005, Judge Means issued an opinion defending the legality of the sentence and finding that the plea was voluntarily, knowingly, and intelligently made. *See* Resp. Ex. D.[2]

### B. Direct appeal; PCRA review

Following the sentencing on September 16, 2005, new counsel, E. Natasha Taylor-Smith, Esquire, was appointed. She failed to file a timely appeal. On October 21, 2005, she requested, and was granted, leave to file a notice of appeal *nunc pro tunc* within 30 days from that date. While she did file a notice of appeal, it was untimely and was followed by a failure to file a brief by the court's deadline, resulting in a dismissal of the appeal. *See* Resp. Ex. G (Pa. Super. Ct. Order dated June 5, 2006, dismissing appeal, "counsel having failed to file a Brief for Appellant" and docket sheets). The Superior Court advised Petitioner of its decision directly. *See id.* (cover letter dated June 5, 2006 accompanying order).

On July 20, 2006, Hack initiated a petition pursuant to the Pennsylvania Post-Conviction Relief Act, 42 Pa. Cons. Stat. §§ 9541-46 ("PCRA").[3] *See* Resp. Ex. H. He alleged that Attorney Taylor-Smith counsel was ineffective for failing to file a brief in the direct appeal and indicated that he sought relief as to the discretionary aspects of his sentence. (PCRA Pet. [Resp. Ex. H] at 2-3.)

---

[2] Hack's petition for habeas relief confirms that it is the September 16, 2005 judgment as to which he seeks relief. *See* Pet. at 4, ¶ 2(a) (form asking for "Date of Judgment of conviction" and reflecting Petitioner's response of "9-16-05"). *See also id.*, ¶ 2(b) (providing "Criminal Case Number" of "CP-89-0607471-1989"); *id.* ¶ 3 (referring "4 to 8 year" sentence imposed by Judge Means).

[3] Hack also submitted a PCRA petition on or about March 16, 2006. *See* Resp. Ex. E. That action was dismissed on March 28, 2006 without prejudice as premature, in light of the fact that the direct appeal was pending at that time in the Superior Court. *See* Resp. Ex. F.

3

Attorney Donald Chisholm, II, Esquire, was appointed and on September 26, 2007 filed an amended petition requesting leave for Hack to file a direct appeal *nunc pro tunc*. The Commonwealth agreed that the direct appeal rights should be reinstated, *see* Resp. at 5, and Judge Means granted Petitioner's request on December 28, 2007. *See* State court docket sheets, Resp. Ex. A at "page 22 of 23."[4] The records fail to show, however, that any appeal or any motion for modification and/or reconsideration of sentence was, in fact, ever filed upon behalf of Petitioner. *See* State Court Docket Sheets, Resp. Ex. A; Appellate Docket Searches, Resp. Ex. J. *See also* Resp. at 5 (asserting that "[n]o appeal was ever filed"). Petitioner does not assert otherwise.

C.     **Federal filing**

On September 24, 2009, this Court received Hack's *pro se* form petition for habeas corpus relief which he dated September 20, 2009. (Pet. at 11.) Petitioner subsequently moved for summary judgment. (Doc. No. 8.) Respondents filed their response to the petition on February 26, 2010. (Doc. No. 9.) Petitioner then submitted a document entitled "Amended Addition to Writ of Habeas Corpus," (Doc. No. 10, dated Mar. 10, 2010), as well as a "Memorandum of Law in Support of Petition for Writ of Habeas Corpus, Or, In the Alternative, Petition for Redress of Grievances" (Doc. No. 11, dated Mar. 23, 2010). On April 28, 2010, he submitted a "Motion for Suppliment [sic] Addition to Amend Petition for Writ of Habeas Corpus." (Doc. No. 14.) We issued an order on May 4, 2010, granting Petitioner's motion to include as part of his petition the additional averments

---

[4] The record that we received from the Clerk of Quarter Sessions does not contain a copy of that order, although it does contain an original and one copy of the "Amended Petition for Relief Under Post Conviction Relief Act" that was filed by Attorney Chisholm on September 26, 2007. *See also* Resp. Ex. I. The proposed order accompanying that filing sought an order and decree "that the above defendant is granted leave to file a motion for modification and/or reconsideration of sentence and Appeal nunc pro tunc [sic] Hence the defendant is returned to the same status as of the time of sentencing." *Id.*

4

contained in his April 28th submission. (Doc. No. 15.) Respondents then filed a supplemental response on May 20, 2010. (Doc. No. 16.) On June 1, 2010, Petitioner submitted a response to Respondents' filing, closing the briefing period. (Doc. No. 17.) Petitioner has also moved for the appointment of counsel. (Doc. No. 12.)

## II. APPOINTMENT OF COUNSEL

Before addressing the petition itself, we first address Hack's April 5, 2010 request for the appointment of counsel. The bases for his request appears to be his contentions that: (1) Respondents are represented by a talented lawyer, evidenced presumably by her response to his petition; (2) he is unable to afford counsel; (3) he has no access to the law library because he is housed in his prison's Restricted Housing Unit; (4) he is not knowledgeable about the applicable law; and (5) our district court has enacted an order providing for the appointment of counsel in select *pro se* prisoners civil right cases. (Doc. No. 12.)

The standard that governs a request for the appointment of counsel in a habeas corpus case is contained in 18 U.S.C. § 3006A(a)(2), which provides that "representation may be provided for any financially eligible person" "[w]henever the United States magistrate judge or the court determines that the interests of justice so require[.]" As our discussion section reflects, we do not find the issues presented by Hack's petition to be particularly complex. Moreover, we do not reach the merits of any claims raised by Hack. While we recognize, as is addressed below, that Hack has experienced difficulties in the earlier aspects of this case's proceedings in state court with respect to his counsel, we do not believe that providing counsel would have any impact upon the outcome of this case given its current posture. Accordingly, we conclude that the interests of justice do not require that counsel be appointed to Hack.

5

## III. DISCUSSION

In his petition, Hack asserts as his first ground for habeas relief a claim concerning "Judgement of Sentence," and contends that he "was sentenced outside of the guide lines." (Pet. at 9.) His second ground for habeas relief concerns a "Time Credit," as to which he contends that he "wasn't given no [sic] time credit from [his] original sentence[] [t]o go towards [his] new state sentence." (*Id.*) In the amendment to his petition submitted some months later, he also contended that he "was denied his constitutionally guaranteed right to effective representation as guaranteed by Article I, Section 9, of the Pennsylvania Constitution and the Sixth and Fourteenth Amendments of the United States Constitution." (Doc. No. 14 at ¶ 1.) *See also id.*, ¶ 12 (referring to Sixth Amendment "guarantee[ing] petitioner a fair trial representation").[5] Respondents contend that Hack's petition for habeas relief is untimely. In addition, Respondents assert that none of the claims asserted have been properly exhausted and that they are now procedurally defaulted. (Resp.

---

[5] Prior to his April 28, 2010 "Motion for Suppliment Addition to Amend Petition," Hack also submitted a document on March 8, 2010 entitled "Amended Addition to Writ of Habeas Corpus," (Doc. No. 10), which he characterized as his "Concise Statement Pursuant to Rule 1925(b) of the Rules of Appellate Procedure." (*Id.* at 1.) That filing suggests that Petitioner believes that none of the laws in effect in Pennsylvania prior to 1968 (when the state constitution was amended) were preserved and, therefore, that persons convicted of crimes pursuant to such statutes cannot "lawfully remain convicted." (*Id.* at 2.) Respondents' supplemental response of May 20, 2010 (Doc. No. 16) does not address this filing. As we consider this claim to be patently frivolous, we saw no need to seek a response by Respondents as to these contentions, nor do we see any need to address them further. *See, e.g., Craig v. Rozum*, C.A. No. 08-2109, 2008 U.S. App. LEXIS 27928 (3d Cir. June 12, 2008) (denying petitioner's request for a certificate of appealability because "[j]urists of reason could not debate that the District Court properly rejected the merits of Appellant's claim that 1968 amendments to the Pennsylvania Constitution rendered the criminal statutes pursuant to which he was convicted 'void of any further force or effect'"); *Shaw v. Wynder*, Civ. A. No. 08-1863, 2008 U.S. Dist. LEXIS 63928 (E.D. Pa. Aug. 20, 2008) (Giles, J.), *adopting* 2008 U.S. Dist. LEXIS 111813 (E.D. Pa. July 30, 2008) (Strawbridge, M.J.) (and authorities cited therein) (reaching same conclusion).

at 5-6; Supp. Resp. at 1-2.)[6]  We agree.

  **A.  Timeliness**

The habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides that:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of —
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The statute also creates a tolling exception, which provides that "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

---

[6] Respondents also assert that the first claim raised by Petitioner is not cognizable on federal habeas review and that, to the extent his Sixth Amendment claim concerns the performance of counsel on PCRA review, that claim is not cognizable either. (Resp. at 5-6; Supp. Resp. at 1-2.) Because the cognizability question would not dispose of all of the claims raised by Petitioner, and given that there are alternative bases for disposition of the petition in its entirety, we do not address the question of cognizability.

7

Hack's petition does not implicate any rights newly-recognized by the Supreme Court, as contemplated in § 2244(d)(1)(C), nor do his filings suggest that he was prevented from submitting his habeas petition to this Court until September 20, 2009 due to an impediment created by any sort of unlawful state action, as contemplated in § 2244(d)(1)(B). His petition and subsequent filings do not suggest that the factual predicate of the cognizable claims presented by his petition were discovered only after his conviction became final and that they could not have been discovered earlier with the exercise of due diligence. Therefore, we conclude that the date upon which the habeas limitation period began to run is governed by 28 U.S.C. § 2244(d)(1)(a): "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[7]

In Hack's case, the challenged sentence was handed down on September 16, 2005. The Superior Court terminated his appeal of that conviction on June 5, 2006 after his attorney failed to file the required brief. Those direct appeal rights, however, were subsequently reinstated by the PCRA Court on December 28, 2007.[8] When the permitted appeal to the Superior Court was not, in

---

[7] These points were also made by Respondents in their response to Hack's petition. (Resp. at 9-10.) Hack's subsequent filings do not purport to rebut these assertions. *Cf.* Pet'r Mot. App't Counsel, dated 4/5/10 (Doc. 12) (noting "Respondent is reco[g]nized for her legal talent").

[8] Again, we recognize that the actual order of the PCRA court reinstating the right to file an appeal in the Superior Court is not contained in the record before us. Such an order is, however, reflected in the state court docket. *See* Resp. Ex. A at "page 22 of 23" (entry dated 12/28/07 associated with "Means, Rayford A." and characterized as "Order Granting PCRA Petition – Leave to Appeal NPT to Superior Ct"). Moreover, Petitioner has not challenged Respondents' accounting of the history of his case. On the contrary, his papers also refer to the fact that Attorney Chisholm was successful in having his direct appeal rights reinstated, even as Hack avers that Chisholm did not then perfect an appeal on his behalf. *See* Pet'r Mot. for Supp. Add. to Amend. Pet., Doc. No. 14 at ¶ 8 ("Mr. Donald Chisholm II filed a[n] Amended Petition for Relief under Post Conviction Relief Act on 9-26-2007"); *id.* ¶ 10 ("Mr. Donald Chisholm II failed to file appeal"); *id.* ¶ 11 ("where [] court appointed counsel[] . . . Mr. Donald Chisholm II was granted leave to Superior

8

fact, filed within the 30-day period provided by the state rules, Hack's conviction became final by operation of law on January 28, 2008.[9] *See also Jimenez v. Quarterman*, 129 S. Ct. 681 (2009) (holding that the AEDPA limitations period begins to run upon the conclusion of the entirety of direct review; the § 2244(d)(1)(A) date "must reflect the conclusion of the out-of-time direct appeal" that the state court had permitted the petitioner to make). In light of the commencement of the one-year period on January 28, 2008, and the fact that there were no further PCRA proceedings pending in the next twelve months, the limitations period for purposes of federal habeas review was not tolled by § 2244(d)(2) (or any other statutory provision) and expired on January 28, 2009. Hack did not initiate these proceedings until September 20, 2009 — almost eight months too late. Therefore, we find that his petition in its entirety is untimely pursuant to Section 2244(d)(1).

This leaves the question of whether Hack might be entitled to equitable tolling of the limitations period for any length of time. Shortly after Hack submitted his final brief in this matter, the United States Supreme Court confirmed what had already been recognized in this circuit: that the one-year statute of limitations applicable to a § 2254 petition is subject to equitable tolling where the petitioner shows both that he has been pursuing his rights diligently and that some extraordinary circumstances stood in his way and prevented timely filing. *Holland v. Florida*, 130 S. Ct. 2549 (June 14, 2010). As Respondents pointed out in their February 26, 2010 response to the petition, Hack's papers as of that point had not addressed the issue of the timeliness of his petition, nor did they offer any grounds for excusing his untimely filing. (Resp. at 8, 11-12.) *See also* Resp. at 11

---

Court to file appeal but failed"). Therefore, we accept as an uncontested fact that the PCRA Court did, in fact, restore Hack's right to challenge his conviction or sentence in a reinstated direct appeal.

[9] The 30th day fell on January 27, 2008, which was a Sunday.

9

(heading for subsection entitled "Petitioner Is Not Entitled to Equitable Tolling"). His subsequent filings (*e.g.,* Doc. Nos. 10-12, 14, 17), do not address the subject either, nor do they seek to rebut Respondents' assertions with reference to any relevant facts to this analysis that might not be apparent from the record before us.

Based upon the information before us, Hack has not satisfied his burden to show an appropriate basis for equitable tolling here. Nothing in Hack's papers suggest that "extraordinary circumstances" prevented him from initiating federal habeas proceedings in this court before the limitations period expired on January 28, 2009. Moreover, we see no evidence of any particular diligence with regards to preserving and seeking review of any claims relative to his conviction or final sentence. Petitioner has not presented evidence of any circumstances even remotely approaching those that the Supreme Court found to be compelling in *Holland*. *See Holland*, 130 S. Ct. 2549 (record showed that petitioner sent counsel letters requesting update on status of case and reflecting intention to seek federal habeas review, that he repeatedly requested that the delinquent attorney be removed from his case, and that he submitted a federal filing himself as soon as he learned, through channels other than his attorney, that his state post-convictions proceedings had concluded and that his federal habeas petition was due). As we find no basis for any tolling of the limitations period, we conclude that the petition filed on September 20, 2009, and as subsequently amended, is not timely.

### B. Procedural default

In the alternative, we agree with Respondents that the Court cannot grant relief as to any of the claims asserted by Hack because they have not been properly presented to the state court and are now procedurally defaulted. AEDPA requires petitioners to "exhaust[] the remedies available in the

courts of the State" before the federal court may grant relief. 28 U.S.C. § 2254(b)(1)(A). In order for a petitioner to satisfy this requirement and give the state courts "one full opportunity to resolve any constitutional issues," he must have "fairly presented" the federal claim to the state courts "by invoking one complete round of the established appellate review process." *Picard v. Connor*, 404 U.S. 270, 275 (1971); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This requirement ensures that state courts have "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). If a bypassed state remedy is no longer available because it is time-barred due to a state limitations period or precluded by some other state procedural rule, the petitioner will be deemed to have procedurally defaulted those claims. *O'Sullivan*, 526 U.S. at 848. Such is clearly the case here, where Hack did not pursue his reinstated direct appeal rights within the time frame provided: 30 days, pursuant to Pa. R.A.P. 903(a), from the December 28, 2007 order granting his PCRA petition and reinstating his direct appeal rights. Further, he did not initiate another PCRA proceeding before the PCRA limitations period would have expired one year later pursuant to 42 Pa. Cons. Stat. §9545(b).

Where a claim is procedurally defaulted, it cannot provide a basis for federal habeas review unless the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or [unless he] demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). *See also Teague v. Lane*, 489 U.S. 288, 308 (1988) (plurality opinion); *Wainwright v. Sykes*, 433 U.S. 72 (1976). The procedural default doctrine and the cause and prejudice standard are "grounded in concerns of comity and federalism." *Coleman*, 501 U.S. at 730. To establish cause, the petitioner ordinarily must show "that some objective factor external to the defense impeded counsel's efforts

to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, the petitioner must show "actual prejudice resulting from the errors of which he complains." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). The fundamental miscarriage of justice exception requires that the petitioner supplement his claims with a "colorable showing of factual innocence." *Id.* at 495. As to that exception, the burden is on the petitioner to provide new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Where an exception has been established, a procedural default will be excused and the claim considered on the merits.

Hack's papers do not suggest that he is factually innocent of the 1989 robbery and aggravated charges to which he pleaded *nolo contendere* in 1990. Therefore, the miscarriage of justice exception does not permit review of his defaulted claims. Nor does Hack make any attempt to establish the cause and prejudice exception. *Cf.* Resp. at 5-6 (noting that Petitioner's claims were defaulted and that he had not established either exception). It is not for us to say that Attorney Chisholm, who was appointed to represent Hack in his PCRA proceeding, bore any responsibility for then perfecting Hack's appeal to the Superior Court. Moreover, "attorney misconduct" may satisfy the "cause" component of the cause and prejudice exception only if the actions or omissions could constitute a Sixth Amendment *Strickland* violation — which is only possible concerning the stages of litigation during which the state is required under the federal Constitution to ensure that the defendant is represented by competent counsel: trial and direct appeal. As to post-conviction proceedings, the petitioner must bear the costs of attorney error. *See Coleman v. Thompson*, 501 U.S. 722, 752-54 (1991); *Murray v. Carrier*, 477 U.S. 478 (1986). *See also Holland v. Florida*, 130 S. Ct. 2549, 2563 (2010) (recognizing that, "in the context of procedural default, we have previously

stated, without qualification, that a petitioner 'must "bear the risk of attorney error."' *Coleman v. Thompson*, 501 U.S. 722, 752-53, 111 S. Ct. 2546, 115 L. Ed.2d 640 (1991)."). Although we appreciate that the misstep here that led to the procedural default — the failure to have taken any action to pursue the direct appeal that became available — was at the crossroads of PCRA and direct appeal proceedings, Petitioner has failed to set out any circumstances that would permit us to conclude that cause has been, or could be, established. Accordingly, we do not believe that there is a basis to excuse the procedural default of all of the claims as to which Hack might seek federal habeas review. We conclude that this Court is thus not in any position to grant Hack habeas relief.

IV. CONCLUSION

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of appealability ("COA") should issue. A COA should not issue unless the petitioner demonstrates that jurists of reason would find it to be debatable whether the petition states a valid claim for the denial of a constitutional right. Where the district court has denied a claim on procedural grounds, a COA is not appropriate unless it also appears that jurists of reason would find the correctness of the procedural ruling to be debatable. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, for the reasons set forth above, we do not believe a reasonable jurist would find the Court to have erred in denying and dismissing the present petition. Accordingly, we do not believe a COA should issue.

Our Recommendation follows.

## RECOMMENDATION

**AND NOW**, this 30th day of July, 2010, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED AND DISMISSED**. It is **FURTHER RECOMMENDED** that a certificate of appealability should **NOT ISSUE**, as we do not believe that Petitioner has made a substantial showing of the denial of a constitutional right or that reasonable jurists would find the correctness of the procedural aspects of this Recommendation debatable.

It is **FURTHER RECOMMENDED** that Petitioner's motion for appointment of counsel (Doc. No. 12) and his motion for summary judgment (Doc. No. 8) be **DENIED**.

Petitioner may file objections to this Report and Recommendation. *See* Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE